# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| RONALD J. PATRICK, | ) |
|---|---|
| Petitioner, | ) |
| v. | ) Case No. 12-CV-0486-CVE-TLW |
| ROBERT PATTON, Director,[1] | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner, Ronald J. Patrick, a state prisoner appearing pro se. Respondent filed a response to the petition (Dkt. # 13), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. #14). Petitioner filed a reply (Dkt. # 15). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On February 19, 2008, Jessica Thompson and her boyfriend, Lecurtis Joyce, were staying at the Rest Inn Motel in Tulsa, Oklahoma. (Dkt. # 14-1, Tr. Vol. I at 146-47). That evening, Petitioner arrived at Thompson and Joyce's motel room. Id. at 149-50. The three left together in Thompson's vehicle to purchase drugs. Id. at 150-51. As she drove, Thompson followed Petitioner's directions to a residential area, where Petitioner instructed her to park the vehicle. Id. at 151-52. Thompson and Petitioner exited the vehicle to meet an additional person to purchase

---

[1] Petitioner is currently incarcerated at the Davis Correctional Facility, a private prison located in Holdenville, Oklahoma. Therefore, the proper respondent in this action is Robert Patton, Director of the Oklahoma Department of Corrections. For that reason, Robert Patton, Director, is hereby substituted as party respondent in place of Justin Jones, the previous Director. The Clerk of Court shall be directed to note the substitution on the record.

drugs. Id. at 153. While waiting for this additional person, Petitioner told Thompson he needed to "make sure [she was] not a cop." Id. at 154. Then, Petitioner sexually assaulted Thompson. Id. at 155-58. After the assault, a vehicle pulled up to the location. Id. at 158. Petitioner approached the vehicle, purchased an amount of cocaine, and handed the cocaine to Thompson. Id. at 158-59. Thompson and Petitioner then rejoined Joyce in the vehicle, at which point Thompson handed the cocaine to Joyce, and they drove away together. Id. at 159. After leaving the location, Petitioner pulled out a gun and a badge and informed Thompson and Joyce that he was an undercover officer and they were just involved in a "drug sting." Id. at 160. Petitioner ordered Joyce to give him the cocaine. Id. at 162. Petitioner directed Thompson to drive to Warehouse Market, in Tulsa, Oklahoma, where his fellow officers would be waiting to arrest Joyce. Id. at 160-61. After arriving at the Warehouse Market, Petitioner directed Joyce to exit the vehicle and walk toward a marked sheriff's car parked in front of the store. Id. at 161. After Joyce left the vehicle, Petitioner, while still armed with the gun, directed Thompson to drive away from the Warehouse Market. Id. at 161-62. He also ordered her to give him her money and prescription medications. Id. at 162. Petitioner then instructed Thompson to pull over in a residential area, where Petitioner again sexually assaulted Thompson. Id. at 166-67. After the assault, Petitioner and Thompson drove back to the Rest Inn Motel, where police officers[2] surrounded the vehicle and arrested Petitioner. Id. at 167-69.

---

[2]  Police officers participating in the arrest included Tulsa Police Officers Harold Wells and Bruce Bonham. See Dkt. #14-1, Tr. Vol. I at 196-99.

Based on these facts, Petitioner was charged by Information in Tulsa County District Court, Case No. CF-2008-876, with Robbery First Degree (Count 1), Rape by Instrumentation (Count 2), Sexual Battery (Count 3), Kidnapping (Count 4), Unlawful Possession of Controlled Drug – Cocaine (Count 5), Unlawful Possession of Controlled Drug – Marijuana (Count 6), Impersonating a Police Officer (Count 7), Obstructing an Officer (Count 8), and Rape by Instrumentation (Count 9), all After Former Conviction of Two or More Felonies. (Dkt. # 14-3, O.R. Vol. I at 41-44). During Petitioner's jury trial, the trial court amended Count 2 to Sexual Battery and dismissed Count 8. See Dkt. # 14-2, Tr. Vol. II at 247-48. The jury convicted Petitioner of Counts 1, 2, 3, 4, 5, 6 , 7, and 9, see id. at 289-90, and, at the conclusion of the second stage, recommended the following sentences: Count 1 – thirty (30) years imprisonment, Count 2 – five (5) years imprisonment, Count 3 – five (5) years imprisonment, Count 4 – ten (10) years imprisonment, Count 5 – ten (10) years imprisonment, Count 6 – one (1) year imprisonment, Count 7 – one (1) year imprisonment, and Count 9 – fifteen (15) years imprisonment. Id. at 309-10. During the punishment phase of Petitioner's trial, the jury did not consider Petitioner's alleged prior felony convictions.[3] At Petitioner's sentencing hearing, the trial court dismissed Count 3 on double punishment grounds. (Dkt. # 13-3 at 1 n.1). The trial court sentenced Petitioner in accordance with the jury's recommendation as to the remaining counts, ordering counts 1, 2, 4, and 5 to be served consecutively, and counts 6, 7, and 9 to be served concurrently. See Dkt. # 14-3, O.R. Vol. I at 10-11; 189-90. Attorneys J. Bryan Rayl and Megan Henson represented Petitioner at trial. See Dkt. # 14-1, Tr. Vol. I at 1.

---

[3] While reading the second stage verdicts, the jury foreperson informed the trial court that the jury "did not take any prior convictions into consideration," see Dkt. # 14-2, Tr. Vol. II at 309, and the verdict forms completed by the jury did not select a number of previous felony convictions. See Dkt. # 14-3, O.R. Vol. I at 99-112.

Represented by attorney Richard Couch, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). See Dkt. # 13-1. Petitioner raised two (2) propositions of error, as follows:

> Proposition I: The evidence was insufficient to prove beyond a reasonable doubt that Appellant committed the crime of impersonating a police officer.
>
> Proposition II: The trial court abused its discretion in ordering counts one, two, four, and five to run consecutively leading to an excessive sentence for Appellant.

See id. In an unpublished summary opinion, filed August 2, 2010, in Case No. F-2009-581, the OCCA denied relief and affirmed the Judgment and Sentences of the district court. (Dkt. # 13-3).

On September 29, 2011, Petitioner filed an application for post-conviction relief. (Dkt. # 13-4). Petitioner raised three (3) propositions of error:

> Proposition I: The Petitioner received ineffective assistance of counsel at trial.
>
> Proposition II: The Petitioner received ineffective assistance from counsel at the appellate level.
>
> Proposition III: New Evidence Regarding the Arresting Officer's [sic] Credibility.

See id. By Order filed March 21, 2012, the trial court denied the application. (Dkt. # 13-5). On July 25, 2012, in Case No. PC-2012-345, the OCCA affirmed the trial court's denial of post-conviction relief. (Dkt. # 13-7).

On August 27, 2012, Petitioner commenced this federal action by filing his pro se petition for writ of habeas corpus (Dkt. # 1). Petitioner raises four (4) grounds of error, as follows:

> Ground I: Petitioner was given excessive sentences when counts One, Two, Four and Five were ordered by the Trial Court to run consecutively. This violated Petitioner's right [sic] against Cruel and Unusual Punishment and Due Process of Law as guaranteed by the United States Constitution.

| | |
|---|---|
| Ground II: | Petitioner's trial counsel was ineffective for failing among his other duties owed to his client, [to] conduct a reasonable investigation. This violated Petitioner's right to counsel as guaranteed by the Sixth and Fourteenth Amendment[s] of the United States Constitution. |
| Ground III: | Petitioner's Appellate Counsel had a Conflict of Interest which materially compromised Petitioner's direct appeal, thus rendering Appellate Counsel ineffective. This violated Petitioner's Right to Counsel and Due Process of Law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. |
| Ground IV: | The prosecutor delibertely [sic] mislead the defense about the evidence the State intended to [ ] introduce regarding the theory of Petitioner's guilt. This violated Petitioner's Right to a Fair Trial as guaranteed by the Fifth and Fourteenth Amendment[s] of the United States Constitution.<br>. . .<br>Newly Discovered Evidence consist[ing] of a lengthy investigation of police corruption activities involving Tulsa police officers Harold Wells, Bruce Bonaham [sic] and Nick Debruim [sic], who were later indicted, after Petitioner's jury trial, by a grand jury on charges of Tampering with Evidence, Theft of Money during a Drug Arrest, etc. At the time of Petitioner's trial, these officers who testified against Petitioner were themselves under a federal investigation for the above mentioned charges. |

See id. (internal citations omitted). In response, Respondent argues that Grounds I and IV are matters of state law not cognizable on federal habeas review, and the OCCA's adjudication of Grounds II and III was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Dkt. # 13.

## *ANALYSIS*

**A.     Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner

5

raised Grounds I-IV to the OCCA on direct and post-conviction appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 102-03 (2011); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Richter, 562 U.S. at 103); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Here, Petitioner presented his habeas claims to the OCCA on direct and post-conviction appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will review the claims under the standards of § 2254(d).

### 1. Excessive Sentence (Ground I)

In Ground I, Petitioner argues that "the decision by the trial court to run Counts one, two, four, and five consecutively, led to excessive sentences for Petitioner violating his rights against cruel and unusual punishment." (Dkt. # 1 at 14). To support this ground of error, Petitioner argues the trial court "provided no reason for these consecutive sentences," and that his resulting term of imprisonment was much longer than the twenty-five (25) years offered by the State. Id. The OCCA rejected this claim on direct appeal, stating, "the trial court's decision to order consecutive or concurrent service of sentences is a matter within its discretion. This discretion was not abused

here." (Dkt. # 13-3 at 2) (internal citations omitted). Respondent argues that because Petitioner has failed to show the sentences imposed were outside the statutory limits or unauthorized by law, Ground I is a matter of state law not cognizable on federal habeas review. (Dkt. # 13 at 2-3).

A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Therefore, a habeas court's "review of a sentence ends once [it] determine[s] the sentence is within the limitation set by statute." Id. Here, Petitioner's sentences were within statutory limits. See Dkt. # 14-3, O.R. Vol. I at 169-82. See also OKLA. STAT. tit. 22, §§ 264, 741, 798, 111.1, 1114, 1116, 1123(B); OKLA. STAT. tit. 63, § 2-402. In addition, Oklahoma law provides that a trial court has the discretion to order that sentences run consecutively or concurrently. See OKLA. STAT. tit. 22, § 976. Therefore, Petitioner's excessive sentence claim is not constitutionally cognizable. Habeas corpus relief on Ground I is denied.

2.  **Ineffective assistance of trial counsel (Ground II)**

In Ground II, Petitioner argues that his trial counsel provided ineffective assistance of counsel. (Dkt. # 1 at 15-16). Specifically, Petitioner argues that counsel performed deficiently by failing to: (1) adequately prepare for trial, (2) adequately cross-examine the victim, Jessica Thompson, and (3) "investigate and require independent verification of the alleged breakdown in the police audio and video equipment that should have recorded the statement Petitioner allegedly made to Officer Waller." Id. at 15. On post-conviction appeal, the OCCA denied Petitioner's claim, finding that,

8

> Mere speculation is [ ] at the heart of each of Petitioner's claims of ineffective assistance of trial counsel. Petitioner alleges his trial counsel did not adequately consult with him prior to trial, did not adequately cross-examine the complainant for possible inconsistencies, and did not make an independent determination if his statements to police were videotaped. Glaring[ly] absent from each of these claims, however, is any proof that relevant, material evidence, beneficial to Petitioner's case would have been uncovered had trial counsel undertaken those actions that Petitioner claims his counsel omitted. Also absent from Petitioner's Application was any demonstration or proof that the evidence to be gained from trial counsel performing the omitted acts would present a reasonable probability for a different outcome at Petitioner's trial.

(Dkt. # 13-7 at 3-4). Respondent argues that the OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See Dkt. # 13 at 4-11.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Richter, 562 U.S. at 104; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a

9

"highly deferential" look at counsel's performance under Strickland and through the "deferential lens" of § 2254(d)).

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Richter, 562 U.S. at 104. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. See Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs. Petitioner bears the burden of demonstrating that the OCCA unreasonably applied Strickland.

### a. Inadequate trial preparation

First, Petitioner argues that his trial counsel was ineffective for failing to prepare adequately for trial. (Dkt. # 1 at 15). Petitioner claims that counsel "only met with Petitioner one time prior to trial for a period of twenty minutes[,] [and] [h]e did not work with Petitioner in developing a trial strategy." Id. Petitioner also asserts that counsel failed to "conduct any type of investigation concerning Petitioner's defense." Id. Petitioner states this "breakdown in communication caused Petitioner to lose confidence in trial counsel's desire and/or ability to work [to his] best ability." Id.

Petitioner has failed to show his attorney performed deficiently, or that there is a reasonable probability that the outcome of his trial would have been different. As the OCCA noted, while Petitioner argues his attorney was unprepared for trial and that he did not conduct "any type" of investigation, Petitioner fails to provide any argument or evidence related to these claims. Petitioner

fails to assert what investigations his counsel should have conducted, or what evidence would have been discovered through these unidentified investigations. Similarly, Petitioner fails to address the alleged deficiencies in trial counsel's defense strategy. Petitioner has failed to present sufficient argument or evidence to further his claim, and "it is not for [this court] to make [Petitioner's] arguments for him, or to analyze issues not adequately presented to [the Court]." Bradford v. Williams, 479 F. App'x 832, 835 (10th Cir. 2012) (unpublished)[4]; see also Snyder v. Addison, 89 F. App'x 675, 681 (unpublished) (10th Cir. 2004) (holding a petitioner's conclusory allegations that counsel failed to "develop a defense theory" and discover additional witnesses and evidence were insufficient to meet the prejudice prong of Strickland) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

In addition, a review of the record reflects that trial counsel cross-examined each witness, including aggressively cross-examining the prosecution's key witness, Thompson, and presented a clear defense strategy by attacking Thompson's credibility. Counsel also discussed elements of the defense strategy with both the court and Petitioner during an ex parte communication shortly before closing arguments. See Dkt. # 14-2, Tr. Vol. II at 252-53. Petitioner has failed to show that the OCCA's denial of Petitioner's claim was contrary to, or an unreasonable application of, Strickland.

### b. Inadequate cross-examination of Jessica Thompson

Next, Petitioner argues that trial counsel inadequately cross-examined the victim, Jessica Thompson, about alleged inconsistencies in both her trial testimony and statements she made to the police. (Dkt. # 1 at 15). These alleged inconsistencies include: 1) "the purpose of the trip she and

---

[4] This and other unpublished court decisions herein are not precedential but are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

her boyfriend, Lecurtise [sic] Joyce, took with Petitioner," 2) "the amount of money she had with her when she left the hotel room," 3) and "what happened to the pills that she allegedly gave to Petitioner." Id. Petitioner argues that these alleged inconsistencies "could have caused the jury to be more skeptical of Ms. Thompson's testimony and likely resulted in a hung jury or a verdict of acquittal." Id.

The Tenth Circuit has repeatedly held that "decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy." DeLozier v. Sirmons, 531 F.3d 1306, 1326 (10th Cir. 2008) (quoting Richie v. Mullin, 417 F.3d 1117, 1124 (10th Cir. 2005)). Petitioner has failed to show counsel's cross-examination of Thompson was not based on sound trial strategy. Counsel did cross-examine Thompson about several inconsistencies in her statements to police, including the extent of her involvement in the drug transaction and the amount and source of the money she had at the time. See Dkt. # 14-1, Tr. Vol. I at 173-90. Counsel also questioned Thompson about her involvement, earlier that day, in the cashing of a forged instrument with her boyfriend Joyce, for which Thompson faced pending charges at the time of Petitioner's trial. See id. at 178-82.

Counsel did not fail to impeach Thompson's credibility. Petitioner has failed to show both deficient performance and prejudice as required by Strickland. The OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, Strickland.

### c. Inadequate investigation of police audio and video equipment

Finally, Petitioner argues trial counsel was ineffective for failing to "investigate and require independent verification of the alleged breakdown in the police audio and video equipment that should have recorded the statement Petitioner allegedly made to Officer Waller." (Dkt. # 1 at 15). Petitioner claims trial counsel should have obtained this "independent verification" of the broken

12

audio and video equipment through either "cross-examination of Waller, the testimony of [a] third party[,] and/or the subpoena of police records." Id. Petitioner asserts that counsel's failure to obtain verification of the audio and video equipment failure "was ineffective and prejudicial because it adversely affected [the] outcome of his case." Id. at 16.

Before allowing opening statements in Petitioner's jury trial, the trial court held a Jackson v. Denno[5] hearing on the admissibility of Petitioner's statement to Detective Marnie Waller. (Dkt. # 14-1, Tr. Vol. I at 117). During this hearing, Petitioner's counsel confirmed with the prosecutor that a recording of Petitioner's statement did not exist. See id. at 124-25. In addition, during his cross-examination of Detective Waller at jury trial, counsel questioned Detective Waller regarding the audio and video equipment located in the interview rooms. (Dkt. # 14-2, Tr. Vol. II at 237-38). In response to counsel's questions, Detective Waller testified that she believed Petitioner's statement was recorded. Id. at 238. Counsel asked to approach the bench, and, outside the hearing of the jury, the prosecutor again confirmed that he had never received a recording of Petitioner's statement. Id. The trial judge then excused the jury to discuss the issue further. Id. at 238-39. After a short recess, during which both defense counsel and the prosecutor met with Detective Waller, both parties confirmed that no recording of Petitioner's statement existed. Id. at 240-41. Counsel's cross-examination of Detective Waller continued, and Detective Waller testified that she was mistaken in her previous testimony. Id. at 241-42. She explained that Petitioner's statement was not recorded due to an audio and video equipment malfunction in the interview room. Id.

---

[5] Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

13

Petitioner has failed to overcome the presumption that counsel's performance "falls within the wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689. Counsel confirmed, at least twice, that a recording of Petitioner's statement did not exist. In addition, counsel questioned Detective Waller about the audio and video recording capabilities of the police department's interview rooms, and emphasized the fact that, due to the absence of a recording to confirm Detective Waller's testimony, the jury would be left to rely solely on her memory. See Dkt. # 14-2, Tr. Vol. II at 242. Further, Petitioner has not shown that the outcome of his trial would have been different had counsel subpoenaed records or called a third party witness to testify. Petitioner has failed to show that the OCCA's denial of this claim was contrary to, or an unreasonable application of, Strickland.

In summary, because Petitioner has failed to demonstrate that the OCCA's adjudication of his claims of ineffective assistance of counsel was contrary to, or an unreasonable application of, Strickland, habeas corpus relief on Ground II is denied.

### 3. Ineffective assistance of appellate counsel (Ground III)

In Ground III, Petitioner argues his appellate counsel provided ineffective assistance of counsel due to a "conflict of interest which materially compromised Petitioner's direct appeal." (Dkt. # 1 at 16). This "conflict of interest," Petitioner claims, existed because both his trial and appellate counsel worked at the Tulsa County Public Defender's Office while representing Petitioner. Id. Petitioner argues that, due to this conflict, appellate counsel failed to raise claims of ineffective assistance of trial counsel to the OCCA on direct appeal. Petitioner claims, "[a]ppellate counsel never explained to Petitioner why he omitted the [claims of ineffective assistance of trial counsel], leaving Petitioner with the belief that the issue would not be raised out of some sense of professional loyalty to his colleague/law partner." Id. The OCCA denied Petitioner's claim that his

14

appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims suggested by Petitioner, finding that Petitioner's claim of ineffective assistance of appellate counsel "inherently rest[ed] on [ ] [ ] speculative, unknown evidence." (Dkt. # 13-7 at 4). The OCCA then denied Petitioner's claim that the "conflict of interest" alleged by Petitioner rendered his appellate counsel's performance deficient. As the OCCA explained,

> [I]n asserting that his appellate counsel labored under a conflict of interest, Petitioner offers nothing more than the circumstance that both appellate counsel and trial counsel were employed by the same public defender's office. This Court has held, however, that representation on appeal by a second attorney from the same indigent defense entity that provided the defendant with counsel at trial is not enough, by itself, to establish the existence of an actual conflict of interest.

Id. (internal citations omitted). In response, Respondent argues that the OCCA's denial of Petitioner's claim was not contrary to, or an unreasonable application of, federal law. See Dkt. # 13 at 11-13.

The Court finds that Petitioner has failed to show that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, Strickland. See 28 U.S.C. § 2254(d). First, Petitioner's claim that his appellate counsel was ineffective due to a conflict of interest relies solely on Petitioner's belief that appellate counsel failed to raise claims of ineffective assistance of trial counsel "out of some sense of professional loyalty to his colleague." (Dkt. # 1 at 16). Petitioner presents no evidence to support this conclusion, other than pointing to the fact that both his trial counsel and appellate counsel worked for the Tulsa County Public Defender's Office at the time. Petitioner's bare allegation, relying solely on the employment of both his attorneys, fails to establish that an actual conflict of interest existed. See Smallwood v. Gibson, 191 F.3d 1257, 1269-70 (10th Cir. 1999) (holding that while the petitioner's trial and appellate counsel both worked for the Oklahoma City Public Defender's Office, that fact alone was insufficient to demonstrate a conflict

15

of interest); see also Carter v. Gibson, 27 F. App'x 934, 947-48 (10th Cir. 2001) (unpublished) (holding that a petitioner failed to show a conflict of interest existed where the petitioner argued that the Oklahoma County Public Defender's Office had an "inherent conflict of interest due to its structure"). In addition, Petitioner fails to demonstrate that his appellate counsel failed to review objectively his trial counsel's performance. See Smallwood, 191 F.3d at 1270.

Second, Petitioner fails to show the OCCA's finding that Petitioner's claim of ineffective assistance of appellate counsel, regarding appellate counsel's failure to raise the claims of ineffective assistance of trial counsel alleged in Ground II, was contrary to, or an unreasonable application of, clearly established federal law. The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." Smith v. Workman, 550 F.3d 1258, 1268 (10th Cir. 2008) (quoting Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004)). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" Id. (quoting Neill v. Gibson, 278 F.3d 1044, 1057 & n. 5 (10th Cir. 2001)).

Petitioner has failed to make the necessary showing. Each of the omitted claims of ineffective assistance of trial counsel were considered and denied by both the OCCA and this Court. Petitioner has failed to show both that his appellate counsel was ineffective for making an "objectively unreasonable" decision to omit the claims raised in Ground II, and that there is a "reasonable probability that the omitted claim[s] would have resulted in relief." See id. For these reasons, Petitioner has failed to demonstrate that the OCCA's denial of his claim of ineffective assistance of appellate counsel was contrary to, or an unreasonable application of, Strickland. Habeas corpus relief on Ground III is denied.

### 4. Newly Discovered Impeachment Evidence (Ground IV)

In his final ground of error, Petitioner argues that "newly discovered evidence" taints the credibility of two of the four officers who testified at Petitioner's trial.[6] (Dkt. # 1 at 17). Petitioner alleges that this newly discovered evidence relates to the federal investigation and eventual prosecution of these officers.[7] Id. Petitioner claims that, "[t]his new evidence if presented to a jury would persuade them that the officers' testimony was unreliable and possibly untrue," and therefore "[s]uch evidence could be enough to provide a juror with a reasonable doubt as to [Petitioner's] guilt or innocence." Id. The only reference Petitioner makes to any alleged wrongdoing by police in his case relates to the absence from the police inventory log of the prescription pill bottles Petitioner was convicted of stealing from Thompson. Id. Petitioner asserts that "[o]ne can only conclude that these bottles of pills were either illegally returned to Ms. Thompson or illegally removed from property by police personal [sic]." Id. On post-conviction appeal, the OCCA rejected Petitioner's claim, finding,

---

[6] The Court notes that, in the heading of Ground IV, Petitioner claims that the "prosecutor deliberately mislead the defense about the evidence the State intended to introduce regarding the theory of Petitioner's guilt." (Dkt. # 1 at 17). However, the argument and analysis in the text of Ground IV relates to Petitioner's newly discovered evidence claim, as raised on post-conviction appeal to the OCCA. To the extent Petitioner raises a claim of prosecutorial misconduct, he has failed to state sufficient facts or evidence to support this claim, and it is denied. See Hall, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

[7] After a federal investigation into corruption within the Tulsa Police Department, two police officers involved in Petitioner's arrest, Officers Harold Wells and Bruce Bonham, were charged in N.D. Okla. Case No. 10-CR-116-BDB. The officers were suspected of, inter alia, planting drugs on individuals to gain convictions. See Dkt. # 13-9. According to the Court's records in N.D. Okla. Case No. 10-CR-116-BDB, Wells was convicted of four counts and Bonham was acquitted of all counts.

> [Petitioner's] claim is one running "to credibility only, and we have held that newly discovered evidence which goes to impeachment purposes only is not sufficient to warrant a new trial." *Lee v. State*, 1987 OK CR 108, ¶ 9, 738 P.2d 173, 177. Moreover, Petitioner only speculates that there may have been wrongdoing in his matter by the two police officers involved in the federal investigation, but he presents no proof of such wrongdoing.

(Dkt. # 13-7 at 3). Respondent argues Ground IV is a matter of state law not cognizable on federal habeas corpus review. See Dkt. # 13 at 13-16.

Petitioner has failed to show that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Petitioner's claim rests entirely on speculation. Petitioner has provided no evidence to suggest that either officer participated in any wrongdoing connected to Petitioner's case.[8] In addition, while Petitioner claims this new impeachment evidence would "provide a juror with a reasonable doubt as to his guilt or innocence," Petitioner has failed to provide any additional argument or analysis to support this assertion. Petitioner bears the burden of showing entitlement to habeas relief under § 2254(d), and he has failed to meet this "highly deferential standard." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citing Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). In light of the evidence presented at Petitioner's trial and the limited involvement of the officers in question, Petitioner's speculative claim fails to warrant habeas corpus relief. Habeas corpus relief on Ground IV is denied.

---

[8] Petitioner does not claim he is actually innocent based on this newly discovered evidence. Instead, Petitioner asserts the newly discovered evidence "directly affect[s]" the credibility of the officers. (Dkt. # 1 at 17). Therefore, the reasoning from Herrera v. Collins, 506 U.S. 390 (1993), relating to claims of actual innocence based on newly discovered evidence, does not apply. However, even assuming Herrera applies, Petitioner would not be entitled to habeas relief as he asserts no underlying constitutional violation related to the police officers' involvement, and the newly discovered evidence is impeachment evidence. See Clayton v. Gibson, 199 F.3d 1162, 1180 (10th Cir. 1999); see also Stafford v. Saffle, 34 F.3d 1557, 1561-62 (10th Cir. 1994).

C.   **Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decisions by the OCCA is debatable among jurists of reason. See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

19

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Court Clerk shall note on the record the substitution of Robert Patton, Director, in place of Justin Jones, Director, as party respondent.

2. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3. A separate judgment in favor of Respondent shall be entered in this matter.

4. A certificate of appealability is **denied**.

**DATED** this 28th day of July, 2015.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE